# District Court of the Navajo Nation

Judicial District of Shiprock, New Mexico

---

**Kee Tom Farley, et al., Plaintiffs,**
**v.**
**Kerr McGee, et al., Defendants.**
**Decided April 23, 1999**

---

## MEMORANDUM OPINION AND ORDER

Judge Lorene Ferguson presiding.

THIS MATTER came on for consideration of the plaintiffs' Motion to Compel Production of Documents and Answers to Interrogatories, filed on April 25, 1997, against Kerr McGee, Vanadium Corporation of America, Foote Minerals Corporation, and Cyprus Foote Minerals Corporation, Jointly and Severally. Since the filing of this Motion, the parties have resolved by agreement the majority of the issues encompassed within plaintiffs' Motion. The only issue remaining before this Court is whether Cyprus Foote Minerals Corporation should be compelled to produce approximately eighteen boxes of documents within their possession, containing information relating to the various uranium mining and milling activities Cyprus engaged in at their locations other than the Shiprock Mill, which was the site out of which plaintiffs' complaint arose.

At the July 14, 1998 hearing attended by Counsel for both parties, this Court, having heard oral arguments and considered the briefs and responsive pleadings of the parties, ordered Cyprus to produce the documents at issue.

## FACTUAL BACKGROUND

Plaintiffs served their First Request for Production of Documents to defendants on February 25, 1997. On March 27, 1997, defendants filed their response to plaintiffs' Request for Production, agreeing to produce documents relevant to the Shiprock site but objecting to production of the documents which are the subject of this opinion. As the parties were unable to agree upon the scope of discovery, on April 25, 1997, plaintiffs filed a Motion to Compel Production of Documents and Answers to Interrogatories, to which defendants responded with a Motion for a Protective Order, filed on May 27, 1997. Both parties' respective positions were argued orally before this Court on November 12, 1997 and April 29, 1998, and supported in writing by memoranda. At the time of the hearing which took place on July 14, 1998, all other issues addressed in the pleadings and plaintiffs' initial discovery request had been resolved by agreement of the parties, with the exception of the production of documents within Cyprus' possession, relating to their mining and milling activities at locations other than Shiprock.

## DISCUSSION

On February 25, 1997, plaintiffs served their First Request for Production of Documents to defendants, who then filed their Response on March 27, 1997, setting forth ten objections to plaintiffs' request. However, subject to and without waiving their stated objections, defendants agreed to make available documents that may be responsive to plaintiffs' request regarding the Shiprock Mill, at defendants' Corporate Headquarters. On April 25, 1997, the parties filed a joint submission, relating to the schedule for the filing of motions to compel responses to discovery, in which they stated the parties were unable to reach a compromise on the scope of discovery, specifically, whether defendants were required to produce documents relating to facilities they operated other than the Shiprock Mill, or whether defendants could limit their production to the Shiprock Mill information. Thus, the parties agreed to submit this single issue to the Court for resolution. Simultaneously, plaintiffs filed their Motion to Compel Production of Documents and Answers to Interrogatories, supported by a Memorandum of Law. Defendants responded with a Motion for Protective Order and a Consolidated Memorandum supporting their motion and responding to plaintiffs' motion. The arguments set forth by both parties follow.

### PLAINTIFFS' ARGUMENTS

First, plaintiffs assert that defendants were "negligent in failing to warn plaintiffs of the dangers posed by their milling activities when they knew or should have known" of the foreseeable hazards to the plaintiffs' health, and that "defendants failed to exercise proper care in operating the Shiprock Mill so as to minimize the hazards posed to plaintiffs." Thus, plaintiffs argue that documents establishing defendants' awareness of such hazards, as well as health and safety practices they could have employed, both before and during the time period in which defendants operated the Shiprock Mill, would be critical to their case.

Plaintiffs further assert that the requested information is relevant within the meaning of Navajo Rule of Civil Procedure 26(b), which states, "[p]arties may discover any relevant matter, not subject to an evidentiary privilege, which pertains to any fact or issue involved in the pending matter." Plaintiffs argue that if discovery were limited to the Shiprock Mill information, documents such as memoranda concerning uranium related illnesses at mills or mines other than Shiprock, or health reports within defendants' possession revealing an increase in cancer rates in workers at uranium mills or mines, would be excluded, despite the fact that such documents would constitute prima facie evidence of defendants' corporate "state of mind."

Plaintiffs next argue that the majority of employees at the Shiprock Mill were Navajo Indians, who often do not fare as well under corporate management as do white employees. They claim that information evincing a greater standard of care taken by management for the health and safety of White employees at defen-

dants' other locations, in contrast to a lack of such protection at the Shiprock Mill, would support an allegation of recklessness or outrageous conduct and thus, the imposition of punitive damages. Plaintiffs also suggest that the Shiprock Mill was a small facility, employing few persons with substantial corporate authority, and therefore was not a likely place for defendants to maintain extensive records revealing corporate knowledge.

Further, plaintiffs argue that defendants' protest of the undue burden that would be placed upon them if they were forced to produce all the information requested of them is without merit, as a party "cannot escape their disclosure obligations simply because they are large corporations with thousands of documents in many locations," nor avoid them "merely because it requires the production of a large number of documents." Finally, plaintiffs assert that they should not be penalized if the defendants have maintained records "in disorganized fashion" and urged the Court to consider the importance of the documents and information requested to plaintiffs' case, as well as the prejudice that would result if such production requests were not granted.

## DEFENDANTS' ARGUMENTS

Defendants' Reply Memorandum does not address plaintiffs' arguments point by point, but rather, focuses on the potentially vast scope of the plaintiffs' discovery requests, as well as the complexity of the present litigation and the need to bring discovery under "manageable control." They argue that the requests for production are "overbroad" and "unduly burdensome," indicating a need for hands-on involvement by the Court.

With regard to the plaintiffs' argument that documents from sites other than the Shiprock Mill are needed to reveal the "corporate state of mind" of the defendants, as it relates to their preexisting knowledge of the dangers posed by their milling activities, defendants agree that some of the documents requested are properly discoverable. Defendants further suggest that the Court's assistance is needed to accomplish the necessary production in the most expeditious and cost-efficient manner possible and urge a procedure for the "phasing of discovery," which they claim is appropriate for complex litigation.

Defendants also address the issue of causation, regarding plaintiffs' alleged exposure to hazardous substances, and argue that unless plaintiffs are able to establish "evidence of a link between actual exposures at Shiprock and the development of cancer," discovery concerning the corporate state of mind should not go forward. Defendants suggest that the information necessary to support discovery on the issue of causation may be supplied "exclusively by production of documents from the Shiprock Mill."

Defendants next focus upon the broad scope of plaintiffs' Request for Production and state that defendants would be required to sort through "millions of pages of documents, generated over a forty-eight year period in relation to no less than seventy separate sites." They further point to Rule 26(b)(1) of the

Navajo Rules of Civil Procedure, arguing that such Rule limits discovery by requiring a showing that it is "likely" that "the discovery will yield admissible evidence." Supporting their proposition that plaintiffs' requests are overbroad, defendants argue that federal regulations required them to maintain huge volumes of information relating to health risks in mines. If forced to comply with plaintiffs' requests, defendants state that they would be required to provide information on respiratory diseases, including lung cancer linked primarily to uranium mining, while the present case pertains to cancers "from entirely different types of exposure." In another example, defendants assert that if plaintiffs' motion is granted, information pertaining to private medical records of individual miners and incident reports of broken bones and slip and fall injuries would also be discoverable.

## ANALYSIS OF THE ARGUMENTS

Pursuant to submitting their Motions and Supporting Memoranda, the parties were able to narrow the issues with regard to the scope of discovery and production of documents and information by defendant Kerr-McGee. Currently at issue are approximately eighteen boxes of documentation within the possession of Cyprus Foote Minerals Corporation. However, it is unclear just what is contained in those boxes. During the April 29, 1998 status hearing, counsel for the plaintiffs indicated that Cyprus had offered to make the *mill* documents available, which constituted twelve of the eighteen boxes. (Transcript, P. 8, L. 14). However, counsel for Cyprus stated that their client had located eighteen boxes, detailing uranium activities outside the Shiprock Mill, but within the Navajo Nation. (Transcript, P. 16, L. 1-5). He further calculated that eleven-and-a-half boxes had to do with mills other than Shiprock, while there were scant records concerning mining operations of Cyprus' predecessor, VCA. (Transcript, P. 16, L. 6-11).

Thus, according to the statements of plaintiffs' counsel, which are unrefuted on the record, six boxes would pertain to *mining* activities. Yet, according to Cyprus' counsel, almost all of the boxes pertain to *milling* activities and only operations on the Navajo Reservation are documented within the entire eighteen boxes. Not only is this information conflicting, but it seems difficult to understand where the dispute between the parties lie and why they were unable to resolve it. This is particularly true, as plaintiffs and defendant Kerr-McGee had already resolved their issues by agreement despite the existence of some thirteen-hundred boxes in Kerr-McGee's possession. Nevertheless, both the parties' motions are before the Court and their respective arguments will be addressed, with the limited scope of the remaining discovery request in mind.

Rule 26(b)(1) of the Navajo Rules of Civil Procedure states that, "[p]arties may discover any relevant matter, not subject to any evidentiary privilege, which pertains to any fact or issue involved in the pending action," as plaintiffs' Memorandum correctly points out. However, plaintiffs do not take the argument

far enough. The Rule continues on to say, "[d]iscovery may be had of information that may be inadmissible at trial if it appears likely the information sought will lead to the discovery of admissible evidence." Defendants, on the other hand, misstate the Rule in their Memorandum, when they claim the Rule imposes a more "stringent" requirement than the federal rules by "requiring a showing that it is 'likely'· the discovery will yield admissible evidence." Rule 26(b)(1) says no such thing. The discovery is not required to yield admissible evidence, nor yield any evidence at all. Rather, the information sought in the discovery request must be "likely" to "lead to the discovery of admissible evidence."[1]

Thus, under Rule 26(b)(1), Nav. R. Civ. P., there are four questions this Court must resolve in determining whether to grant plaintiffs' motion. First, is the information sought by plaintiffs and contained within the eighteen boxes in Cyprus' possession relevant matter? Second, is it subject to an evidentiary privilege? Third, does it pertain to any fact or issue involved in the pending action? Fourth, does it appear likely that such information will lead to the discovery of admissible evidence? In addition, defendants' Motion for Protective Order and Supporting Memorandum is before this Court. Rule 26(c) of the Navajo Rules of Civil Procedure states, "[u]pon motion ... by the person from whom discovery is sought, ... and for good cause shown, the court in which the action is pending may make any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Thus, this Court must also determine if good cause has been shown by defendants that in granting plaintiffs' Motion to Compel Production, such will cause annoyance, embarrassment, oppression, or undue burden or expense, to the defendants.

We begin our analysis of the relevancy of the documents and information sought in  plaintiffs' discovery request, as well as the other questions which arise under Rule 26(b)(1), Nav. R. Civ. P., by focusing on plaintiffs' arguments in support of their Motion to Compel. Plaintiffs have alleged that defendants were negligent in their operation of the Shiprock Mill, for several reasons. First, plaintiffs claim defendants dumped radioactive materials, nonradioactive heavy metals and other toxic substances from their uranium milling activities at the Shiprock Mill into the San Juan River in which the neighboring decedents drank, bathed and laundered clothing, and the defendants "failed to exercise proper care in operating the Shiprock Mill so as to minimize the hazards posed to plaintiffs." Second, plaintiffs state that the decedents lived within one quarter mile of the Shiprock Mill and were exposed to dangerous materials, due to

---

1. While defendants claim Rule 26(b)(1) of the Navajo Rules of Civil procedure "impose more stringent requirements than the comparable federal rules," after which the Navajo Rules are modeled, F.R.C.P. 26(b)(1) states that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The federal rule is similar to the Navajo rule in that both rules suggest the scope of discovery is to be broad and neither rule requires the information sought to be admissible, nor does either require that admissible evidence must result from the discovery. In any event defendants construction of the Navajo rule is not only inaccurate and misleading but imposes a more narrow requirement than either rule.

the emission of those materials into the immediate environment, as well as by direct contact with uranium dust yellow cake and toxic chemical residue which clung to Mr. Farley and Mr. Kady's clothing which decedents handled and laundered. Third, plaintiffs allege that defendants were "negligent in failing to warn plaintiffs of the dangers posed by their milling activities when they knew or should have known that the radioactive and hazardous materials processed at and emanating from the Shiprock Mill posed a foreseeable hazard to the plaintiffs' health."

Plaintiffs thus claim that documents or information which evince what defendants knew or should have known about the existing hazards related to their milling activities, prior to or during the time defendants operated the mill, are not only relevant, but are of critical importance to plaintiffs' case. Plaintiffs also argue that documents or information which reveal defendants' health and safety practices, or their awareness of such practices that could or should have been in place, would be of "considerable relevance."

In addition to their allegations of negligence, plaintiffs seek to determine if defendants' conduct was reckless or outrageous, in light of the fact that the workers employed at the Shiprock Mill were largely Native Americans, who they claim have often "been treated by American corporations with less respect, concern and solicitude than those companies have shown towards their white employees." Plaintiffs argue that production of documents from defendants' other sites located outside the reservation and staffed by primarily white employees is necessary in order to establish and to compare the respective standards of care in existence with regard to health and safety, and thus falls within the criteria established within Rule 26(b)(1), Nav R. Civ. P., defining discoverable information.

This Court finds that the documents and information sought by plaintiffs are within the meaning of the term "relevant," as it appears within Rule 26(b)(1), and plainly relate to facts and issues involved in the pending action. In addition, they are also within the broader prescription of the Rule's requirement that the information sought is discoverable if it "appears likely the information sought will lead to the discovery of admissible evidence." Such admissible evidence could potentially include interoffice correspondence regarding disposal, treatment and handling of hazardous substances, incident reports detailing health and safety problems, industry studies concerning hazards to humans resulting from exposure to such substances, documents establishing the existence of similar litigation involving other plaintiffs, or correspondence from regulatory agencies or insurers. Such evidence would be admissible under Rule 7 of the Navajo Rules of Evidence, barring any proscription or exclusion, as the Rule defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Finally, defendants have raised no claim of evidentiary privilege with

regard to the information sought.[2]

Relevance and other criteria defining what is "discoverable" under Rule 26(b)(1), Nav. R. Civ. P., are not confined in applicability to documentation and information pertaining only to defendants' activities at the Shiprock Mill, for several reasons. For one, it is not unusual for large businesses to maintain certain kinds of documents exclusively within the offices of their corporate headquarters or significant sites. This is particularly true of sensitive documents, documents from regulators or insurers, and those which relate to company policy or potential liability. As the defendants are large corporations, this is even more likely to be true. In addition, as plaintiffs state, "[t]he Shiprock Mill was just one facility and a relatively small facility at that" and was, thus, unlikely to employ individuals possessing substantial corporate authority. It is therefore improbable that an abundance of important documents would be contained at a site such as the Shiprock Mill.

Moreover, a large American corporation would be even less likely to maintain sensitive or important corporate records in a small site located on an Indian Reservation, as such a business would be incorporated within the jurisdiction of a particular state and would operate subject to the laws and jurisdiction of that state or possibly other states in which business was transacted, as well as the federal government, where applicable. While the sovereignty of Indian Nations was perhaps not as well defined in case law during the time period at issue in this case as it is today, nevertheless, Indian tribes have long possessed attributes of sovereignty and separateness that would have made their trust lands unlikely, if not impossible, locations in which to locate and conduct significant corporate affairs and decisionmaking for sizeable corporations operating throughout the United States. However, this is not to say that records kept in relation to defendants' other reservation sites are not to be produced, or have no significance, particularly in light of plaintiffs' intent to determine if a pattern existed with regard to the standard of care at reservation sites employing Native Americans, in contrast with those sites located off the reservation and employing non-Indians.

With regard to defendants' attempts to limit discovery to documents and information pertaining to mills, and exclusively the Shiprock Mill, as opposed to *mines*, defendants' argument of "irrelevance" must fall. Much of the reasoning already elaborated upon by the Court establishing the scope of discovery as broad, may be applied here. Negligence or recklessness on the part of the defendants with regard to their operational practices, as well as the standard of care applied on the reservation sites in contrast to defendants' off-reservation sites,

---

2. On page 19 of their Consolidated Memorandum, defendants state that compliance with plaintiffs' request could conceivably require that defendants turn over private medical records of individual miners. It is unclear whether defendants are suggesting a claim of privilege would attach to such records. Any claim of privilege would have to be asserted by the individual miner whose privacy is at stake. However, this seems pointless as discovery of such records or the potential admission of such records could not be construed against the interests of the individual miners, who are not parties to this suit. Further, the Navajo Rules of Evidence does not recognize a doctor-patient privilege.

and defendants' "corporate state of mind" may be determined by documents pertaining to mines, as well as mills. A corporations' headquarters or other corporate facilities frequently have oversight responsibility for all or many of that corporations' locations and subsidiaries. Thus, sensitive information is not always separated and maintained at different sites. Further, defendants' own efforts to distinguish mining operations from milling operations are problematic.

For one, the defendants seek to establish the irrelevance of its minings documents, as well as its milling documents, to plaintiffs' case by arguing first that only the Shiprock Mill documents are relevant for discovery purposes, as plaintiffs should initially establish causation, before proceeding further. Defendants suggest this can best be determined by establishing the "dose" of radioactive exposure to which decedents were exposed, in connection with uranium milling activities at Shiprock. Purportedly, this information is contained within the Shiprock Mill documents. However, defendants also state that this case is "extremely complex" and rely on another court's words, in support of this point, stating "the question of whether exposure to radiation caused a person's cancer is 'extremely complex.'" This seems to contradict defendants' assertion that causation can be established simply by determining the dose of radioactive exposure to which decedents were subjected, by implying that many sources of information are necessary to establish causation.

Next, defendants claim that exposures in mines, which are underground, are "completely dissimilar from the surface exposures alleged in this case," and that the cancers at issue in this case are different from the respiratory diseases plaguing miners and come from "entirely different types of exposure." At the July 14, 1998 hearing, defendants' counsel summarized their position that nothing in this suit relates to any mining in which Cyprus has an interest. At the same time, defendants have noticed the deposition of Dr. Gene Saccamanno, whom they identify as a potential "expert" witness in this case. However, documents provided to this Court by defendants some time ago establish that Dr. Saccamanno's expertise is exclusively in the area of lung cancer in miners. Defendants' position is contradictory and their argument backward. To qualify as an expert, a witness must have special knowledge, training, experience, skill, or education sufficient to qualify him as an expert on the particular subject about which he testifies. Defendants apparently presume a great deal of relevance or similarity between cancers and radioactive exposure in general, in suggesting that an expert in the cancers of uranium miners would qualify to address the hazards related to uranium milling, when such might not be the case. On the other hand, discovery of documents relating to defendants' mining operations need only be "likely" to "lead to the discovery of admissible evidence." The standard must be broader for discovery and narrower for expert testimony, not the reverse.

Last, defendants suggest that the federal government focused the majority of its health and safety studies relating to uranium and radioactive exposures on uranium mining, leaving a void with regard to conclusive information regarding

uranium milling and health hazards. If this is true, little information on the effects of uranium and its byproducts on human pathology will be found in the Shiprock Mill or any other mill records, while it is more likely that government or independent studies of such potential health hazards will be found in either mining records or corporate records in defendants' headquarters.

Turning now to our final inquiry, we must determine whether good cause has been shown by defendants for the Court to grant their Motion for Protective Order, pursuant to Rule 26(c), Nav. R. Civ. P. We find that defendants have not met their burden.

In their Motion for Protective Order, defendants state that they, "move for entry of a protective order to establish a plan under which discovery can be accomplished in the most cost-effective and efficient manner in this complex case." Under Rule 26(c), Nav. R. Civ. P., a party from whom discovery is sought may move for a protective order for good cause shown. The court may grant the order "to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense...." In defendants' supporting Memorandum, the only qualifying criteria asserted in support of their motion was that plaintiffs' request for production was "unduly burdensome." As this Memorandum was a consolidated effort by all the defendants of record and was filed prior to the subsequent agreement of the parties, which has narrowed the scope of discovery considerably, defendants' argument is moot. Production of the eighteen boxes within the possession of Cyprus Foote Minerals is not unduly burdensome, particularly for a corporation of this size.

This is not to suggest that the singular standard to be applied by this Court in determining whether or not to compel production is merely the amount of documentation within a party's possession, for such is clearly not the case. Rather, the qualifying factors are found within Rule 26(b)(1), Nav. R. Civ. P., which we have already addressed. However, in their supporting Memorandum defendants argue extensively, albeit somewhat dramatically, that the scope of plaintiffs' request is "breathtaking," and could potentially require information generated over a forty-eight year period, pertaining to seventy sites and including millions of documents. Such is plainly no longer applicable, as the eighteen boxes are all that is presently at issue. More importantly, defendants do not claim plaintiffs seek to annoy, embarrass, or oppress defendants or any person or inflict undue expense upon defendants in producing the eighteen boxes which are presumably already contained somewhere. Nor do they claim that the contents of such boxes contain attorney work product or information subject to evidentiary privilege. Defendants may have other concerns regarding the documents contained within the eighteen boxes, but such have either not been presented to the Court or do not fall within the justifying criteria of Rule 26(c).

The thrust of defendants' argument is that the Court should grant their motion in "order to establish a plan under which discovery can be accomplished in the most cost-effective and efficient manner...." The desire, or even need, for Court

involvement in a discovery plan is not grounds for granting a protective order, but may rather be the result of such an order by the Court, which has eight options available to it in executing or facilitating the order, pursuant to Rule 26(c). Therefore, such Motion is denied, as defendants have not established the criteria necessary for this Court to grant their Motion for Protective Order, under Nav. R. Civ. P. 26(c).

Having considered both parties' arguments and applying the defining criteria for discoverable information under Rule 26(b)(1), Nav. R. Civ. P., this Court holds that the documents and information sought by plaintiffs in their Motion to Compel Production are relevant matter, pertaining to facts and issues involved in the pending action and are not subject to any evidentiary privilege which thus far has been shown to exist. Further, it is likely that the documents and information sought will lead to the discovery of admissible evidence, without which the plaintiffs' case will be prejudiced. Such documents are to be turned over within the time frame established at the July 14, 1998 hearing. In addition, defendants' Motion for a Protective Order is denied, as defendants have not met their burden under Rule 26(c), Nav. R. Civ. P. The Court must caution that there is a presumption, created by the substance of Rule 1, Nav. R. Civ. P.,[3] as well as the modern realities of trial preparation and the mandates of professional conduct, that plaintiffs will not abuse the latitude given in granting their motion.

One remaining focus of defendants' argument which has not yet been addressed, is their proposal that plaintiffs be required to establish causation before the parties proceed with discovery. Such was an irrelevant argument to a determination of a Motion for Protective Order; the Court will address this issue, in order to promote economy.

While the Court can appreciate the defendants' desire for a bifurcated trial, to follow defendants' proposal in this instance would mean that plaintiffs must first *prove* their case before *proceeding* with it. Establishing causation and the necessary link between exposure to hazardous substances and subsequent illness or death is not a simple matter, as defendants have suggested, because the cause and effect sequence here is not as black and white as is often the case in other matters involving science. For example, if one drops a glass on a concrete floor, it is relatively easy to prove the impact between the glass and the concrete caused the breakage. One can determine the compressive strength or other properties of glass, as well as the Barcol hardness and other properties of the floor. Add velocity and other principles of physics to the equation and one can clearly determine the cause of the breakage. Such is rarely the case with something as complicated as cancer and human pathology. Proof of causation in this case requires review of medical records and complicated expert testimony, scientific data and information, fact witnesses who can establish the decedents' lifestyle and other relevant habits or facts which may be contributing factors, in addition to testi-

---

3. Rule 1 states, "These rules govern the procedure in all civil actions. They shall be construed to serve the just, speedy, and inexpensive determination of every action."

mony and evidence establishing the circumstances relating to the decedents' exposure to the suspected carcinogen, as well as information and testimony regarding the operational practices and relevant standard of care of the defendants. The final determination involves questions of fact, to be determined by a jury, as well as questions of law, which a court could not address without the above evidence and information presented in a trial.

Under Rule 40(b), Nav. R. Civ. P., the decision to order a separate trial on the issue of causation is within the discretion of the Court. This may be done for the sake of convenience, or to avoid prejudice or promote judicial economy. Defendants claim the issue of causation would be relatively simple to address and would preserve the resources of the Court and parties in the event plaintiffs are unable to meet their burden. In reality, this "issue" constitutes the entire crux of the case and any fair determination of causation will utilize the bulk of the resources which would have been allocated by the parties, as well as the Court, in the event of a full blown trial. Determination of causation in the present case cannot be limited to merely establishing the "dose" of radioactive or hazardous materials to which the decedents were exposed, but rather requires an in-depth determination of many facts and issues. This is particularly true in any toxic tort case in which the court must rely upon the testimony of experts, whom often provide complicated and technical scientific evidence and can be expected to disagree with one another in such an adversarial process.

Moreover, any preservation of resources which the defendants might imagine would result from a bifurcated trial would be more than offset by the prejudice to plaintiffs' case. The plaintiffs have an inviolate right to a jury trial, as prescribed by Rule 38(a)(b), Nav. R. Civ. P., as well as the mandate of Rule 40(b). Implied in this prescription is the right to have only one jury pass upon common or central issues. To have a mini-trial prior to proceeding with discovery, as defendants suggest, would make it difficult to assure the same jury could be empaneled in the event defendants are unsuccessful and the case continues and is scheduled for trial, possibly years later. Bifurcation could then conceivably result in one trier of fact hearing the causation issue and another hearing the balance of any remaining liability and damages issues, violating the implied command of Rules 38(a)(b) and 40(b), Nav. R. Civ. P., and, thus, adversely impacting plaintiffs' rights and prejudicing their case.

In addition, in the event plaintiffs are ultimately successful on the liability issue, the jury hearing the damages issue would not have the benefit of the testimony of witnesses in the liability phase to aid it in the determination of appropriate damages, potentially prejudicing the plaintiffs' case. This is particularly true, in a case such as this, where allegations of outrageous conduct, negligence and recklessness exist. Similarly, the reverse could be true if plaintiffs make their case for liability but are unable to sufficiently motivate the jury regarding its award of damages. The jury determining damages is entitled to hear full testimony of the witnesses in order to determine the weight or absence of harm to

plaintiffs, as well as any mitigating factors which might benefit defendants as well as plaintiffs.

In short, this Court is not convinced that the issue of causation can be neatly severed from any remaining considerations of liability or damages and it is dificult to imagine how attempts to do so would not harm the plaintiffs' case. The plaintiffs are entitled to a full and adequate opportunity to present their case, with regard to causation. This is not a black and white matter in which one can apply a set of facts to a statute or contract to determine a conclusive violation or breach. Thus, it is the determination of this Court that the issue of causation will not be tried or addressed separately.